**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**BLAS G. VARELA**,

　　　**Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　**Case No. 1:10-cv-847 JB/WDS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

　　　**Defendant.**

<u>**MAGISTRATE JUDGE'S PROPOSED FINDINGS**</u>
<u>**AND RECOMMENDED DISPOSITION**</u>[1]

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse and Remand for Reinstatement of Benefits. [Doc. 14.] Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security determining that Plaintiff's benefits should terminate because he is no longer disabled. Having considered Plaintiff's motion [Doc. 14], Defendant's response [Doc. 17], and Plaintiff's Reply [Doc. 19], the administrative record and applicable law, the Court recommends Plaintiff's motion be GRANTED and that this matter be remanded to the Commissioner of Social Security for further proceedings consistent with these findings.

**I.  Background**

Plaintiff was born November 7, 1963. Tr. 74. He has past relevant work experience as an oil field worker and unskilled laborer; he is illiterate in English and has a third grade education which he completed in Mexico. Tr. 73, 74, 121, 829.

In 1995, Plaintiff fell from a ladder at work, allegedly injuring his back and right knee. Tr.

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

729.  He applied for benefits in 1998 and was granted disability benefits and supplemental security income (SSI) on September 29, 2000, with a disability onset date of August 28, 1995.  Tr. 72–76. At the time Plaintiff was found to be disabled, an Administrative Law Judge (ALJ) found he had the following medically determinable severe impairments:  low back pain associated with herniated discs at L4-5 and L5-S1, knee pain associated with chondromalacia of the right knee with atrophy of the quadriceps, and a dysthymic disorder.  Tr. 73.  These impairments were found to result in a residual functional capacity to perform less than the full range of sedentary work.

In 2005, the Social Security Administration (SSA) undertook a review of Plaintiff's disability claim.  Tr. 133, 658; *see also* 20 C.F.R. §§ 404.1589, 416.989 (mandating periodic evaluation to determine if recipients are still eligible for benefits).  SSA initially determined that disability payments should cease because Plaintiff failed to cooperate with the review process.  Tr. 133.

Plaintiff requested reconsideration.  Tr. 125.  A hearing officer conducted a hearing on August 29, 2006.  Tr. 116.  She determined that Plaintiff had experienced medical improvement and was no longer disabled.  Tr. 120, 122.  The hearing officer found that although Plaintiff still had a severe impairment that prevented him from doing his past relevant work, he had a residual functional capacity (RFC) for a wide range of medium work.  Tr. 122.

Plaintiff requested a hearing before an ALJ.  Tr. 97.  The hearing was held on June 17, 2008. Tr. 824.  Plaintiff was represented by counsel and testified through an interpreter.  Tr. 824–44.  A vocational expert also testified.  Tr. 845–46.

In a decision issued July 16, 2008, the ALJ, like the hearing officer, determined that medical improvement had occurred and that Plaintiff was no longer disabled.  Tr. 21, 26.  In reaching this conclusion, the ALJ found Plaintiff had the residual functional capacity to perform the full range

of light, rather than medium work, as the hearing officer had concluded.  Tr. 22.  On July 13, 2010,

the Appeals Council denied Plaintiff's request for review, Tr. 3, thus rendering the ALJ's decision

the final decision of the Commissioner, from which Plaintiff now appeals.  Plaintiff filed this action

for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Legal Standards

### A.      Standard of Review

This Court may only review the Commissioner's decision to determine whether it is

supported by substantial evidence and whether correct legal standards were applied.  *Andrade v.*

*Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993).  The substantial evidence

standard requires more than a scintilla, but less than a preponderance of evidence.  *Lax v. Astrue*,

489 F.3d 1080, 1084 (10th Cir. 2007).  Evidence is not substantial if it is overwhelmed by other

evidence or if it constitutes a mere conclusion.  *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

The Court also must consider whether the ALJ followed the specific rules of law that must

be followed in weighing particular types of evidence in disability cases; however, the Court does

not reweigh the evidence or substitute its judgment for the Commissioner's.  *Hackett v. Barnhart*,

395 F.3d 1168, 1172 (10th Cir. 2005) (citations and quotation marks omitted).  Instead, the Court

should meticulously examine the record to determine whether the Commissioner's decision is

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993) (citations and quotation marks

omitted).  "In addition to a lack of substantial evidence, the Secretary's failure to apply the correct

legal standards, or to show us that [he] has done so, are also grounds for reversal."  *Winfrey v.*

*Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citation omitted).

**B.**     **Termination of Benefits**

The Commissioner must "from time to time" evaluate a claimant's impairments to determine if he is still eligible for benefits.  20 C.F.R. §§ 404.1589, 416.989.  The Commissioner refers to this process as a "continuing disability review."  *Id.*  Benefits may be terminated "on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by...substantial evidence which demonstrates that...there has been any medical improvement...and...the individual is now able to engage in substantial gainful activity."  42 U.S.C. § 423(f)(1).  Before terminating benefits, the Commissioner bears the burden of showing that the claimant has the ability to engage in substantial gainful activity.  *Glenn v. Shalala*, 21 F.3d 984, 987 (10th Cir. 1994).

The continuing disability review (CDR) process consists of eight steps for disability benefits and seven steps for supplemental security income.  20 C.F.R. § 404.1594(f)(1)–(8); 20 C.F.R. § 416.994 (b)(5)(i) – (vii).  The Commissioner first determines whether the claimant is engaging in substantial gainful activity.  If so, the Commissioner will find that disability has ended.[2]  20 C.F.R. § 404.1594(f)(1).  If the claimant is not engaging in substantial gainful activity, the evaluation proceeds to step two (step one for SSI):  whether the claimant has an impairment or combination of impairments that meets or equals the severity of a listed impairment.  If so, the Commissioner will find that disability continues.  20 C.F.R. § 404.1594(f)(2); 20 C.F.R. § 416.994(b)(5)(i).  If the impairments do not meet a listed impairment, the evaluation proceeds to step three (step two for SSI):  whether there has been "medical improvement" as shown by a decrease in "medical severity."

---

[2]Whether the claimant is engaging in substantial gainful activity is not considered for purposes of continued supplemental security income eligibility.  20 C.F.R. § 416.994 (b)(5)(i) –(vii).  Otherwise the steps are identical for both disability and SSI benefits.  *Compare* 20 C.F.R. § 404.1594(f)(1)–(8) (disability review - eight steps), *with* 20 C.F.R. § 416.994 (b)(5)(i – vii) (SSI review - seven steps).

20 C.F.R. § 404.1594(f)(3); 20 C.F.R. § 416.994(b)(5)(ii).  If there has been medical improvement, the evaluation proceeds to step four (step three for SSI): whether the medical improvement is related to the claimant's ability to work.  20 C.F.R. § 404.1594(f)(4); 20 C.F.R. § 416.994(b)(5)(iii). Medical improvement is related to a claimant's ability to work if "there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination."  20 C.F.R. § 1594(f)(4).  If there has been no medical improvement, or if the medical improvement is not related to the ability to work, the evaluation proceeds to step five (step four for SSI):  whether one of two specified groups of exceptions applies. The exceptions are not relevant in this case.  Accordingly, the Court will not discuss the process for evaluating them.

If, at step four (step three for SSI), the medical improvement relates to the claimant's ability to work, the evaluation proceeds to step 6 (step five for SSI):  whether all current impairments in combination are severe.  If the impairments are not severe, the Commissioner will find the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(6); 20 C.F.R. § 416.994(b)(5)(v).  If the claimant's current impairments are severe, the evaluation proceeds to step seven (step six for SSI):  whether the claimant can perform his past relevant work, taking into consideration all current impairments. If the claimant can perform his past relevant work, the Commissioner will find that disability has ended.  20 C.F.R. § 404.1594(f)(7); 20 C.F.R. § 416.994(b)(5)(vi).  If the claimant cannot perform his past relevant work, the evaluation proceeds to the step eight (step seven for SSI):  whether the claimant can perform other work.  If the claimant can perform other work, disability has ended; if not, disability continues.  20 C.F.R. § 404.1594(f)(8); 20 C.F.R. § 416.994(b)(5)(vii).

### III.  Summary of ALJ's Decision and Plaintiff's allegations of error

The ALJ found Plaintiff was not engaging in substantial gainful activity.  Tr. 21.  The ALJ found next that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of a listed impairment.  Tr. 21.

He then found that Plaintiff had experienced medical improvement because there had been a decrease in the medical severity of the impairments that were originally found to be disabling, and that the medical improvement was related to Plaintiff's ability to work.  Tr. 21, 25.  When Plaintiff was granted benefits in 2000, he was found to be disabled due to back and knee pain resulting in an RFC of less than a full range of sedentary work.  The ALJ found that the medical improvements in Plaintiff's condition since then have resulted in a less restrictive RFC; according to the ALJ, Plaintiff now has the capacity to perform the full range of light work.  Tr. 22, 25.

The ALJ concluded that Plaintiff's impairments caused more than minimal limitation in his ability to perform basic work activities and thus continued to be severe, and further, that Plaintiff could not perform his past relevant work as a laborer.  Tr. 25.  Finally, the ALJ concluded that the Medical-Vocational Guidelines (the "grids") directed a finding of "not disabled."  Tr. 26.

Plaintiff alleges the following errors:  (1) the ALJ failed to perform the legally required analysis in rejecting the opinion of a treating physician, Dr. Barkman; (2) the ALJ erroneously assessed Plaintiff's impairments; (3) the ALJ erred in using the grids; (4) the ALJ's assessment of Plaintiff's credibility was erroneous; and (5) the ALJ applied an incorrect burden of proof.

### IV.  Discussion

The Court addresses the allegations of error in the order that they affect the review process.

**A.**   **The ALJ's finding of medical improvement is supported by substantial evidence.**

6

Plaintiff argues the ALJ erroneously assessed his impairments, and in particular that he "mischaracterized" the evidence of medical improvement.  According to Plaintiff, the ALJ's assessment was in error because there is evidence that Plaintiff suffers from a bulging lumbar disc.

"Medical improvement" is defined as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)[.]

20 C.F.R. § 1594(b)(1).

Regarding medical improvement, the ALJ noted that the most recent favorable medical decision finding Plaintiff disabled was the decision dated September 29, 2000, designated the comparison point decision (CPD).  Tr. 21.  At that time, Plaintiff was found to have "low back pain associated with herniated discs at L4-5 and L5-S1, knee pain associated with chondromalacia of the right knee with atrophy of the quadriceps, and Dysthymic Disorder, secondary to physical limitations and pain."  Tr. 21.  Supporting the finding of disability at the CPD, the ALJ cited an "MRI of the lumbar spine performed at the San Juan regional medical center on March 12, 1996 [which] showed a herniated disc at L4-5, and some bony degenerative changes at that level with moderate stenosis."  Tr. 22–23.

By 2001, however, an MRI indicated that disc herniation was no longer present.  Dr. Lance Dell's report states:

> There is persistent evidence of decrease in normal disc hydration at L4-5 with reasonable maintenance of remaining disc spaces and all examined vertebral body heights.  The previously seen prominent anterior extradural defect at L4-5 is no longer present with no evidence of operative change presumably representing retraction of previously seen disc herniation.

Tr. 582.  The ALJ further noted that in June 2006, Dr. Barkman reported Plaintiff had no difficulty

lying down on an examination table, neurological findings were intact, there was no evidence of muscular atrophy, the range of motion of the knees was normal, and that forward flexion of the lumbar spine was 45 degrees.  Tr. 23, 629–32.  An MRI performed in October 2006 indicated a "[s]mall broad-based posterior disk bulge with annular tear" at L4-5, mild facet flavum hypertophy, and mild lateral recess narrowing.  Tr.  514.

Plaintiff concedes the disc is no longer herniated, but contends that because it is bulging, it is still not normal.  [Doc. 14 at 9–10.]  However, the ALJ does not have to determine if the claimant has returned to "normal."  He need only determine whether there has been medical improvement. Medical improvement is not synonymous with complete recovery and absence of signs and symptoms; it is merely "any decrease in medical severity."  20 C.F.R. § 1594(b)(1).  Plaintiff does not dispute that a bulging disc is an improvement over a herniated disc.  The ALJ determined Plaintiff had experienced medical improvement and the Court concludes this finding is supported by substantial evidence.

### B.   The ALJ erred by failing to address the proper balancing of factors or to articulate what weight, if any, to assign the treating physician's opinion.

The ALJ found that the medical improvement was related to Plaintiff's ability to work. Plaintiff argues that this finding was in error because the ALJ failed to perform the required analysis in rejecting the treating physician's opinion.  The Court concludes the ALJ was not required to give the treating physician's opinion controlling weight, but that the decision fails to reflect the proper balancing of factors or to indicate the weight, if any, the ALJ assigned to the treating physician's opinion.

In June 2006, Plaintiff saw his treating physician, Dr. Barkman for a Disability Determination Examination.  Tr. 629–32.  Dr. Barkman reported at that time that Plaintiff "was not

in any distress," had no difficulty undressing or standing down from the examining table, had normal grip strength, no muscle atrophy in the upper or lower extremities, had full extension of both knees, and normal gait. Although Plaintiff had poor posture, Dr. Barkman reported he "is able to forward flex about 45 degrees of lumbar motion." Tr 630–31. Dr. Barkman's impression in June 2006 was "chronic lower back pain likely non neurologic in character with probable significant degree of functional overlay." Tr. 631–32.

In May 2008, Dr. Barkman completed a "Medical Source Statement of Claimant's Ability to Perform Work-Related Activities" checklist form. Tr. 473–74. He checked the boxes indicating Plaintiff could lift and carry 10 pounds occasionally, stand and walk less than two hours, and sit less than six hours. Tr. 473. According to the vocational expert who testified at Plaintiff's hearing, these limitations and others Dr. Barkman found would eliminate all job possibilities. Tr. 845–46.

The ALJ relied on Dr. Barkman's June 2006 report to conclude that Plaintiff had undergone medical improvement, but declined to give controlling weight to Dr. Barkman's May 2008 opinion regarding Plaintiff's limitations. The ALJ concluded that the limitations on sitting, standing, and walking that Dr. Barkman reported in May 2008 were "not consistent with [Dr. Barkman's] medical report of June 28, 2006 or with [Dr. Barkman's] physical examination of the claimant." Tr. 23. He concluded that "greater weight" should be given to a July 11, 2006 report by medical consultant Dr. Janice Kando. Tr. 24. Dr. Kando determined upon review of the evidence in the file that Plaintiff had some functional limitations and was limited to lifting no more than 50 pounds on an occasional basis. Tr. 24, 622. The ALJ found Dr. Kando's assessment was "consistent with the total evidence in the file." Tr. 24.

Plaintiff argues that the ALJ failed to perform the legally required analysis in rejecting the opinion of Dr. Barkman, a treating physician. The Court agrees, and further concludes that this error

9

of law requires remand.

An ALJ should generally give more weight to opinions from the claimant's treating sources. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2).  "In deciding how much weight to give a treating source opinion regarding the nature and severity of impairments, an ALJ must first determine whether the opinion qualifies for 'controlling weight'." *Watkins*, 350 F.3d at 1300.  The opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence[.]."  20 C.F.R. § 404.1527(d)(2).  If the opinion is deficient in either of these two respects, it is not entitled to controlling weight.  *Watkins*, 350 F.3d at 1300.

In this case, the ALJ did not give controlling weight to Dr. Barkman's May 2008 opinion. The reason the ALJ did not give the opinion controlling weight is because he found it inconsistent with Dr. Barkman's June 2006 Disability Determination Examination.

However, the "controlling weight" issue does not end the review. *Watkins*, 350 F.3d at 1300. A finding that a treating physician's opinion is not entitled to controlling weight does not mean it is entitled to no weight.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Watkins*, 350 F.3d at 1301 (quoting SSR 96-2p, 1996 WL 347188, at *4).  These factors are: (1)  the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.   *Watkins*, 350 F.3d at 1301; 20 C.F.R. §

404.1527(d)(2)(i)–(ii), 416.927(d)(2)(i)–(ii).

The ALJ must consider the pertinent factors and give good reasons for the weight he ultimately assigns the opinion. *Watkins*, 350 F.3d at 1301.  It is here that the ALJ erred.  The Court is unable to determine how much weight, if any, the ALJ assigned Dr. Barkman's opinion regarding Plaintiff's limitations.

The ALJ's conclusion that Plaintiff is capable of the full range of light work is not consistent with either Dr. Barkman's or Dr. Kando's assessment.  Dr. Kando's opinion that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently is consistent with a physical exertional requirement of medium, as the hearing officer concluded.  20 C.F.R. § 1567(c).  Yet the ALJ found Plaintiff was capable of only light work.

It appears the ALJ reached a compromise RFC somewhere between the opinions of Dr. Barkman and Dr. Kando, but his decision does not state this, nor does he offer an explanation. Absent an explanation, the Court is unable to determine how the ALJ reached his conclusion, what weight he assigned Dr. Barkman's opinion, or whether he considered the relevant factors.  Remand is required when the ALJ fails to articulate the weight he assigns a treating physician's opinion or when the record does not reflect that the ALJ considered all the relevant factors.  *Lopez v. Astrue*, 371 F.App'x 887, 889–91 & n.2 (10th Cir. 2010) (unpublished).

The Court agrees, as the Commissioner argues, that the use of comparative terms may in some cases be sufficient to show that the ALJ gave consideration to the pertinent factors when discounting a treating physician's opinion.  *See Tom v. Barnhart*, 147 F.App'x 791, 793 (10th Cir. 2005) (unpublished).  In this case, however, the use of the comparative term "greater weight" is not consistent with the ultimate RFC determination.  The inconsistency and lack of an explanation for the apparent compromise conclusion precludes meaningful review and requires remand.

**C.      The ALJ's credibility determination is supported by substantial evidence.**

Plaintiff challenges the ALJ's credibility finding, arguing that the finding is insufficiently specific.  The Court disagrees.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation and quotation marks omitted).  Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted).  The process "does not require a formalistic factor-by-factor recitation of the evidence" but is satisfied if "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The Court concludes the ALJ was sufficiently specific about which of Plaintiff's testimony he did not believe.  The ALJ noted that Plaintiff testified "he is able to sit for no more than 10-12 minutes and he can lift no more than eight pounds.  He spends three to four hours a day lying down and three hours walking or standing.  He has pain in his right elbow and is unable to lift his arms above shoulder level.  He has problems sleeping, cooking, washing dishes, taking care of himself, and grooming himself."  Tr. 22.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but he did not find credible Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms. Tr. 22. The ALJ found Plaintiff's testimony regarding his limitations not credible given that there was "no evidence of neurological deficits, muscle spasm, marked decrease in range of motion, or muscle weakness." Tr. 24.  He further found that "[m]ultiple medical sources have not found any objective findings to

support [Plaintiff's] alleged functional limitations" and there "are minimal abnormal findings on a recent MRI and there are no objective findings of significant abnormal findings on exam." Tr. 24.

In arguing that the credibility finding is not sufficiently specific, Plaintiff isolates a single sentence from the ALJ's decision and ignores numerous other findings. For example, the ALJ noted that although Plaintiff had complained of back pain and weakness, and was seen to ambulate with a bent gait, several doctors had reported symptom magnification. Tr. 23. Furthermore, although Plaintiff testified he had difficulty dressing and doing other daily activities, his treating physician reported that Plaintiff had no difficulty undressing, lying down or getting off the examining table, had normal range of motion in his knees and was capable of forward flexion of the lumbar spine up to 40 degrees. Tr. 23. The Court concludes there is substantial evidence to support the credibility determination.

**D.      The ALJ did not fail to develop the record.**

Plaintiff argues the ALJ failed to develop the record regarding Plaintiff's exertional activities throughout a 24-hour period. He also complains the ALJ was impatient, accused him of being nonresponsive when it was apparent Plaintiff did not understand the questions, interrupted his attorney, and dispensed with a corroborating witness offered by his counsel.

Because a social security disability hearing is a nonadversarial proceeding, the ALJ is "responsible in every case to ensure than an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citations and internal quotation marks omitted). Generally this means the ALJ has the "duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).

In this case, Plaintiff has not identified any relevant evidence or information that the ALJ

failed to develop.  While it is true the ALJ abandoned a line of questioning after failing to elicit meaningful responses from the Plaintiff, Tr. 844, Plaintiff does not explain how he was harmed by the ALJ's failure to require him to answer questions accounting for every hour of his day. Furthermore, the Court cannot conclude that the ALJ failed to develop the record by declining to question a witness whom Plaintiff's own attorney characterized as merely corroborating and cumulative.  Tr. 844–45.

  **E.**  **The Court will not review the ALJ's findings regarding new impairments or the ALJ's use of the Grids**.

  The Court declines to consider whether the ALJ erred by finding Plaintiff "did not develop any additional impairments after the CPD through August 1, 2006."  Tr. 21.  The RFC based on Plaintiff's medical improvement must be reevaluated upon remand and may be subject to change. Whether any alleged new impairments have an additional limiting effect may depend on the RFC the ALJ assigns after proper assessment of the treating physician's opinion.

  The Court also declines to consider whether the ALJ erred by relying on the grids to find Plaintiff not disabled or whether he should have deferred instead to the vocational expert who testified that an individual with the limitations found by Dr. Barkman could not perform any work. Because this case is being remanded for proper weighing of Dr. Barkman's opinion, the Court need not determine at this time whether use of the grids is proper in Plaintiff's case.

  **F.**  **The Commissioner should be instructed to apply the proper burden of proof.**

  The ALJ's decision incorrectly states the burden of proof.  Tr. 20–21.  Upon remand, the Commissioner should apply the correct burden of proof.  *See Hayden v. Barnhart*, 374 F.3d 986, 991 (10th Cir. 2004) (citing 40 C.F.R. § 404.1594(f))(burden in termination-of-benefits review is on the Commissioner).

## V.  Conclusion

The Court recommends that Plaintiff's Motion to Reverse and Remand for Reinstatement of Benefits be **GRANTED**, and that this matter be remanded to the Commissioner of Social Security for further proceedings consistent with these findings.

_____

**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**

.